NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMIKA COVINGTON, | |
| Plaintiff, | |
| | Hon. Garrett E. Brown, Jr. |
| v. | |
| | Civil Action No. 08-3639 (GEB) |
| INTERNATIONAL ASSOCIATION OF APPROVED BASKETBALL OFFICIALS, ET AL., | **MEMORANDUM OPINION** |
| Defendants. | |

**BROWN**, **Chief Judge:**

This matter comes before the Court upon the two motions pending in this case. First, the motion for judgment on the pleadings filed by Defendant the Hamilton Board of Education (the "Hamilton BOE"). (Doc. No. 68.) Second, the motion for judgment on the pleadings, or in the alternative, for summary judgment filed by Defendant the International Association of Approved Basketball Officials (the "IAABO"). (Doc. No. 75) Plaintiff Tamika Covington ("Covington") opposes both motions. (Doc. Nos. 71, 83.) The Court has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78. Having done so, the Court will grant both motions and dismiss Covington's amended complaint.

I.  BACKGROUND

Plaintiff Tamika Covington, who is female, filed an amended complaint on June 15, 2009, that is the operative pleading in this gender discrimination case. In her amended

complaint, Covington alleges that she was "employed" by the IAABO and its local affiliate Defendant the International Association of Approved Basketball Officials Board 193 ("Board 193") as an interscholastic basketball referee from 1997 until December, 2006. Covington alleges that the IAABO, Board 193, and the other defendants named in this case discriminated against her based upon her gender. Specifically relevant to the present motions, Covington alleges that the IAABO, as her employer, is either directly or vicariously liable for gender discrimination pursuant to Title VII of the 1964 Civil Rights Act and various other state laws. Additionally, Covington alleges that the Hamilton BOE discriminated against her based upon her gender in violation of Title IX of the Education Amendments of 1972.

On January 2, 2010, the Hamilton BOE filed its present motion for judgment on the pleadings and therein argues that Covington has stated no claim against it upon which relief can be granted. Shortly thereafter, on February 24, 2010, the IAABO filed its present motion for judgment on the pleadings or in the alternative, for summary judgment on all of Covington's claims against the IAABO. Covington has opposed both motions.

## II. DISCUSSION

### A. Legal Standard

"A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6)." *Borough of Sayreville v. Union Carbide Corp.,* 923 F. Supp. 671, 676 (D.N.J. 1996) (citing *Turbe v. Virgin Islands,* 938 F.2d 427, 428 (3d Cir. 1991)). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and

the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

    **B.**    **Application**

        **1.**    **The IAABO's Motion**

Covington alleges that the IAABO is liable for gender discrimination either directly as Covington's employer, or vicariously as the entity that "controls" Board 193, which Covington alleges also discriminated against her on the basis of her gender. The IAABO argues that Covington's claims fail whether analyzed under Fed. R. Civ. P. 12, or 56, because Covington

was not an "employee" of either the IAABO or Board 193.

Title VII of the Civil Rights Act of 1964 provides that "it shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex . . . or to limit, segregate or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Because the statute only applies to employers, "[a] threshold legal question in considering liability under Title VII is whether the defendant is plaintiff's employer." *Rodriguez v. Lauren*, 77 F. Supp. 2d 643, 646 (E.D. Pa. 1999). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person," § 2000e(b), and an "employee" as "an individual employed by an employer." § 2000e(f). The latter definition, as the Supreme Court has stated, is "'completely circular and explains nothing.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (construing the definition of "employee" in ERISA, which is the same definition as in Title VII).

The Third Circuit has held that "the proper inquiry under Title VII for determining employer status looks to the nature of the relationship regardless of whether that party may or may not be technically described as an 'employer.'" *Graves v. Lowery*, 117 F.3d 723, 728 (3d Cir. 1997) (citing *LeGrand v. Lowery*, 65 F.3d 162 (3d Cir. 1995)). "The inquiry . . . looks to the level of control an organization asserts over an individual's access to employment and the

4

organization's power to deny such access." *Id.* The court explained that "the precise contours of an employment relationship can only be established by a careful factual inquiry." *Id.* at 729.

   The *Graves* court considered the following factors in determining the level of control the defendant there exerted over the plaintiff: which entity paid their salaries, hired and fired them, and had control over their daily employment activities. *Id.* at 727-30. When engaging in this careful factual inquiry regarding employer status, district courts in this circuit have also looked to the following factors enunciated in *Nationwide Mutual Insurance Company v. Darden*: "the hiring party's right to control the manner and means by which the product is accomplished[;] . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-34 (1992) (explaining that the inquiry is guided by the common law of agency to determine whether a master-servant relationship exists between the parties).

   In this case, Covington alleges that she was "employed" by the IAABO and Board 193 within the meaning of Title VII. The Court concludes that taking all factual allegations in the amended complaint as true and viewing them in the light most favorable to Covington pursuant to the aforementioned standard, that Covington has failed to adequately plead that she was an employee of Board 193 and/or the IAABO. In light of *Darden* and *Graves,* the Court takes a

comprehensive view of Covington's detailed factual allegations to determine whether an employment relationship plausibly existed. Further, the Supreme Court instructs that when considering the adequacy of pleadings, the Court must look beyond mere labels and bald legal conclusions. *Iqbal*, 129 S. Ct. 1949 (quoting *Twombly,* 550 U.S. at 570). Having done so in this case, the Court concludes that Covington has failed to plead sufficient facts to allow the Court to conclude that an employment relationship plausibly existed between Covington and Board 193 and/or the IAABO.

First, critically, Covington nowhere alleges that she was ever actually "hired" by either Board 193 and/or the IAABO. Instead, Covington simply lodges the bald allegation that she was "employed" by the IAABO beginning in 1997. Though Covington alleges the IAABO requires various types of training, certification, and other periodic duties from its members, the amended complaint contains no allegation that the IAABO must "hire" a person at the outset of the relationship. Thus, Covington's amended complaint leaves unanswered the question whether Covington was ever hired by the IAABO, or simply elected to complete the IAABO's training and certification and thereafter simply became a bona fide "member" of the IAABO to whom games were periodically assigned. Indeed, Covington appears to use the term "employment" and "membership" interchangeably throughout the amended complaint. It follows that, because Covington has failed to allege that she was ever "hired" by the IAABO, her allegations fall short under various other elements of the *Darden* inquiry. For instance, the following elements weigh against Covington: "whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is

part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." *Darden*, 503 U.S. 323-34.

Further, the Court concludes that even if Covington had adequately alleged that she was "hired" by the IAABO, her complaint fails in other critical respects. For instance, Covington nowhere alleges that she ever received any payment from either Board 193 or the IAABO. Indeed, Covington specifically states that she is paid by the school districts for whom she referees games. While Covington alleges that the IAABO will "guarantee" payment if the schools fail to pay Covington, at no point does Covington allege she received any compensation from the IAABO. Additionally, nowhere does Covington allege that she received other benefits from Board 193 or the IAABO at any time. Further, Covington's amended complaint does not allege that she held any tax status with Board 193 or the IAABO at any time. Finally, the Court concludes that Covington has failed to adequately allege that Board 193 and the IAABO are really businesses at all. To this end, though Covington alleges that the IAABO is in the business of "providing referees to basketball games", there is no allegation that Board 193 and the IAABO earn income from any source other than the various fees charged to their members.

Thus, in sum, the Court concludes that Covington has failed to adequately allege that an employment relationship existed between herself and either Board 193 or the IAABO at any time. As a result, the Court will dismiss Covington's Title VII claims contained in Counts II and IV of Covington's amended complaint.

    **2.**    **The Hamilton BOE's Motion**

Covington alleges that the Hamilton BOE has violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, by discriminating against Covington because of her sex. The Hamilton BOE argues that this claim should be dismissed, and the Court agrees. § 1681 establishes that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

Covington's complaint fails to state a claim against the Hamilton BOE for at least the elementary reason that Covington has failed to allege that the Hamilton BOE receives any Federal financial assistance. Plainly, the statute only applies to institutions that receive such assistance. As such, Count V of Covington's amended complaint against the Hamilton BOE will be dismissed.

### 3. Covington's State Law Claims

It is undisputed that federal subject matter jurisdiction in this case exists as a result of the federal questions presented by Covington's claims under Title VII and Title IX. As noted above, those claims will be dismissed by the Court. In light of the absence of any federal claim, the Court will not exercise supplemental jurisdiction over Covington's state law claims pursuant to 28 U.S.C. § 1367. A District Court, pursuant to 28 U.S.C. § 1367(c)(3), "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." *Edlin Ltd. v. City of Jersey City*, No. 07-3431, 2008 U.S. Dist. LEXIS 41118, at *24 (D.N.J. May 23, 2008) (citing *Atkinson v. Olde Economie Fin. Consultants, Ltd.*, No. 05-772, 2006 U.S. Dist. LEXIS 54289, at *5 (W.D. Pa. Aug. 4, 2006)). This determination is discretionary and "[t]he general approach is for a district court to . . . hold

that supplemental jurisdiction should not be exercised when there is no longer any basis for original jurisdiction." *Id.*; *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) ("pendent jurisdiction 'is a doctrine of discretion, not of plaintiffs right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Applying this standard to the procedural posture in this case, the Court shall decline in its discretion to exercise supplemental jurisdiction over Covington's remaining state law claims.

**III.    CONCLUSION**

For the foregoing reasons, the IAABO's motion for judgment on the pleadings shall be GRANTED and Counts II and IV of Covington's amended complaint shall be dismissed.  (Doc. No. 75)  Further, the Hamilton BOE's motion for judgment on the pleadings shall be GRANTED and Count V of Covington's amended complaint shall be dismissed.  (Doc. No. 68.)  In light of the dismissal of those federal claims, the Court shall decline to exercise supplemental jurisdiction over the remaining state law claims and DISMISS Covington's amended complaint.  (Doc. No. 25.)  However, because the aforementioned claims are dismissed without prejudice, the Court will grant Covington leave to file a second amended complaint, if any.  An appropriate form of order accompanies this memorandum opinion.

Dated: August 26, 2010

                                                                         /s/ Garrett E. Brown, Jr.
                                                                       GARRETT E. BROWN, JR., U.S.D.J.